IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDALL J. MOORE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-2080-N |
| | § | |
| UNIT TEXAS DRILLING, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Unit Texas Drilling, LLC's ("Unit") motion to transfer venue to the Western District of Oklahoma [31].  Because Unit did not shown that the Western District of Oklahoma is a clearly more convenient forum than the Northern District of Texas, the Court denies Unit's motion.

### I. ORIGINS OF THE MOORES' MOTION TO TRANSFER VENUE

Plaintiffs Randall J. Moore and Jonathan W. Moore (the "Moores") are oil rig workers who allege that Unit discriminated against them in violation of Title VII of the Civil Rights Act of 1964.  They claim that Shane Battles, a Unit supervisor, sexually harassed them from about December 2007 to April 2008.  The Moores worked for Unit in both Texas and Oklahoma, but they chose to sue in the Northern District of Texas, where they both live.

Unit hired the Moores at its field office in Weatherford, Texas in August 2007.  It assigned them to a work on a oil rig that moved several times during their tenure with the company.  The Moores say Battles began harassing them when the rig was stationed in Lake

Worth, Texas, in December 2007. The rig then moved to Antlers, Oklahoma, where the alleged harassment continued. Some time after that, the Moores allege that Carl Powell, another supervisor, joined in the harassment, calling Jonathan Moore "a bitch" and threatening to "knock him out." (Pl.'s Compl. at 2-3.) Jonathan complained to a human-resources staffer in Unit's Weatherford office.

The Moores, along with three coworkers, quit their jobs with Unit in late April 2008 and filed discrimination charges with the EEOC. Later, the coworkers — Bradley Schlottman, Jonathan Schlottman, and Joseph McMunn (collectively "the *Schlottman* plaintiffs") — sued Unit in the United States District Court for the Western District of Oklahoma. *See Schlottman v. Unit Drilling Co.*, Civil Action No. 08-1275-C (W.D. Okla. filed Nov. 21, 2008). On the same day, the Moores, represented by different counsel than the *Schlottman* plaintiffs, sued Unit in this Court. Other than their overlapping Title VII claims, each group of plaintiffs makes different allegations. The *Schlottman* plaintiffs bring a claim under 42 U.S.C. § 1981, an Oklahoma *Burk* claim, and individual claims against Battles for common-law assault and battery. The Moores also claim intentional infliction of emotional distress. Unit alleges that the *Moore* and *Schlottman* plaintiffs brought these cases as part of a civil conspiracy to "get rich" by suing Unit. (Def.'s Mot. Transfer Venue at 6.)

Unit hopes to consolidate the two cases. Initially, Unit sought to transfer both cases to the Eastern District of Oklahoma.[1] Judge Cauthron, the judge in *Schlottman*, denied Unit's

---

[1]In sur-reply to the earlier motion to transfer to the Eastern District, the Moores irrelevantly note that Unit's counsel's father is Chief Judge of that Court. *See* Sur-Reply at

motion to transfer.  Unit now seeks to transfer this case to the Western District of Oklahoma for possible consolidation with *Schlottman*.

## II. THE COURT DENIES UNIT'S MOTION TO TRANSFER VENUE

A district court may transfer a civil case to "any other district or division where it might have been brought," for the "convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  But a party seeking transfer has the burden to show "good cause" for the transfer.  *In re Volkswagen of Am.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc), *cert. denied*, 129 S. Ct. 1336 (2009).  This means that "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Volkswagen II*, 545 F.3d at 315.

The "preliminary question" in a section 1404(a) analysis is whether the action could have been brought in the proposed venue.  *Volkswagen II*, 545 F.3d at 312.  In this case, the parties do not dispute that this case could have been brought in the Western District of Oklahoma.[2]

The second part of the section 1404(a) inquiry — the "convenience of the parties and witnesses, in the interest of justice" — depends on a number of factors, implicating both

---

5.  The implication is that Unit hoped for favorable treatment in that district due to the familial relation.  This type of argument not only maligns Unit's counsel, it maligns the judges of the Eastern District of Oklahoma.  Counsel are admonished not to make such insinuations absent substantial supporting evidence.

[2]Title VII has its own venue statute, which allows a party to sue (among other places) in the a district "in which the unlawful employment practice is alleged to have been committed."  42 U.S.C. § 2000e-5(f)(3).  Given that the alleged harassment occurred in part in the Northern District of Texas, venue is proper in this Court.

public and private interests. *Volkswagen II*, 545 F.3d at 315 (reinforcing that, in section 1404(a) transfer cases, district courts should apply the *forum non conveniens* factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

### A. Private-Interest Factors

Unit has not shown that the Western District of Oklahoma is a "clearly more convenient forum" than the Northern District of Texas under the private-interest venue factors.

***1. Relative Ease of Access to Proof.*** — Ease of access to proof remains a meaningful factor despite technological advances in discovery and evidence. *Volkswagen II*, 545 F.3d at 316. The location of documents and records has particular salience in employment cases. *See, e.g.*, *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (holding that the district court erred in failing to consider the location of books and records, especially employment records).

Here, ease of access to proof does not weigh in favor of transfer. The Moores argue that at least some of Unit's sources of proof are likely to be found at its office in Weatherford, Texas (in the Northern District of Texas). Unit hired the Moores at its Weatherford office, and it was to that office that Jonathan Moore directed his sexual-harassment complaint. Unit argues that its "master" employment records are maintained and administered in Tulsa, Oklahoma. But Tulsa is in the Northern District of Oklahoma, not the Western. Thus, if Unit's case requires master records available only in Tulsa, it will have to transport those records for trial regardless whether the Court transfers the case. Unit has not shown that it would be more burdensome to transport the records from Tulsa to Dallas than from Tulsa to Oklahoma City. Accordingly, this factor is neutral.

*2. Availability of Compulsory Process.* — When a court lacks absolute subpoena power over witnesses who are unwilling to testify, a transfer of venue may be appropriate. *See Volkswagen II*, 545 F.3d at 316. But this consideration is not to be based on hypothetical unwilling witnesses; a party seeking transfer must specifically identify unwilling witnesses. *See, e.g.*, *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, Civil Action No. 08-CV-0816, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) ("Ternium also does not identify any unwilling witnesses that would be subject to subpoena in this court but not in the District of South Carolina. Therefore, this factor is neutral."); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, Civil Action Nos. 08-CV-211, 262, 263 & 275, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008) ("Defendants have not demonstrated any need for compulsory process in California to secure witnesses, so the second factor weighs against transfer.")

ORDER – PAGE 5

Unit has identified no unwilling witnesses whose cooperation will require compulsory process. Accordingly, this factor is neutral.

***3. Cost of Attendance for Willing Witnesses.*** — In order to show that the cost of attendance to willing witnesses weighs in favor of transfer, a movant must provide specific information about the witnesses, their locations, and their proposed testimony. *See, e.g.*, *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002) (noting that a movant must make "a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony" (citing *Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401-02 (N.D. Tex. 1984)). Without particular information, courts cannot weigh relative cost of attendance to each witness and the centrality of each's testimony.

Several considerations may be relevant to this factor. One is the distance witnesses must travel. *Volkswagen I*, 731 F.3d at 204-05. In *Volkswagen I*, the Fifth Circuit held that "[w]hen the distance between an existing venue for trial . . . and a proposed venue. . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.*; *see also Volkswagen II*, 545 F.3d at 317 ("The district court disregarded our precedent relating to the 100-mile rule."). The content of a proposed witness's testimony is also relevant. For instance, another judge in the Northern District of Texas gave reduced weight to the testimony of a witness who would "only offer cumulative testimony." *Ternium*, 2009 WL 464953, at *4. Likewise, it was important to the *Volkswagen II* Court that Volkswagen had provided specifics about its witnesses' proposed testimony (issues relating to "causation and liability"), along with affidavits from the

witnesses stating "that traveling to the Marshall Division would be inconvenient." *Volkswagen II*, 545 F.3d at 317.

Unit fails to show that cost of attendance to willing witnesses weighs in favor of transfer. The only proposed witness whose testimony Unit specifically describes is Carl Powell. Unit "anticipates Powell will testify the allegations against Unit and Battles in both cases are part of a 'get rich scheme' concocted by the Moores, Schlottmans, and McMunn." (Def.'s Mot. Transfer Venue at 6.) Unit says that Powell will also testify to working conditions on the rig. In short, Powell's testimony is important to Unit's case. But according to Unit, Powell lives in Abilene (in the Northern District of Texas), not Oklahoma. Depending on the route taken, Abilene is approximately 250 to 280 miles from Oklahoma City. By contrast, Abilene is about 185 miles from Dallas. Unit does list names and residences of other proposed witnesses, but it does not provide specifics about their testimony or relative importance to the case. Accordingly, the Court cannot conclude that the cost of attendance to willing witnesses necessitates transfer.

**4. Other Practical Trial Considerations.** — The last private-interest factor involves "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor does not tilt the balance in favor of transfer. Admittedly, if this case were transferred, and if the two cases were consolidated, it would likely be more convenient and less expensive for Unit to try the cases together. But transfer would merely shift expense and inconvenience from Unit to the Moores. This is not enough to make the Western District of Oklahoma a "clearly more convenient" forum. Indeed, "the court may not transfer a case where the result is merely to shift inconvenience of the venue

from one party to the other." *See NDC Invs. LLC v. Lehman Bros., Inc.*, Civil Action No. 05-CV-2036, 2006 WL 2051030, at *2 (N.D. Tex. July 21, 2006) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001). Moreover, some of the economies of trying the cases together can still be achieved by "by coordinating deposition schedules and other discovery." *See NDC*, 2006 WL 2051030, at *4 (noting that "costs could be saved and the convenience of the parties and witnesses promoted" by coordinating depositions and discovery between cases pending in adjacent judicial districts).

### B. Public-Interest Factors

Unit has not shown that the Western District of Oklahoma is a "clearly more convenient forum" than the Northern District of Texas on account of the public-interest venue factors.

*1. The administrative difficulties flowing from court congestion*. ─ This factor considers the relative congestion of the courts' dockets. *E.g.*, *Ternium*, 2009 WL 464953, at *5; *NDC*, 2006 WL 2051030, at *5. Congestion is typically measured in terms of the median amount of time for resolution of cases in the current and proposed venues. *See, e.g.*, *Sargent v. Sun Trust Bank, N.A.*, Civil Action No. 03-CV-2701, 2004 WL 1630081, at *4 (N.D. Tex. July 20, 2004) ("[T]he median time interval for case resolution in this district is one and one-half months shorter than in the Middle District of Florida. This difference is immaterial, and this factor is neutral in the court's analysis.") The median time from filing to disposition of cases is 7.4 months in the Northern District of Texas and 8.3 months in the

ORDER – PAGE 8

Western District of Oklahoma.[3]  Because the median time is actually slightly shorter in the Northern District of Texas, docket congestion does not weigh in favor of transfer.

*2. The Local Interest in Having Localized Interests Decided at Home.* — Both the Western District of Oklahoma and the Northern District of Texas have an interest in this litigation.  Unit hired the Moores at its field office in Weatherford, Texas.  The rig on which the Moores worked was initially in  Texas and was later moved to Oklahoma.  The Moores allege a continuing course of harassment beginning in Texas and continuing in Oklahoma. Because Unit has not demonstrated that Oklahoma has a stronger interest in the litigation than Texas, this factor does not weigh in favor of transfer.

*3. Governing Law* — The final two public-interest factors are "the familiarity of the forum with the law that will govern the case" and avoiding "unnecessary problems of conflict of laws."  *Volkswagen II*, 545 F.3d at 315.  Both Courts here are equally able to apply the cases' one common, federal-law claim, Title VII.  As to the nonoverlapping claims, neither party suggests, and the Court does not think, that issues of governing law weigh in favor of transfer.

### C. "The Interests of Justice"

The "interest of justice" component of the section 1404(a) venue-transfer statute is important and often considered independently of the public- and private-interest factors.

---

[3]These figures come from an annual report of the United States judiciary business, attached as an appendix to the Moores' response to Unit's motion.  Pl.'s App. to Resp. to Mot. Transfer Venue at 2-4.

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3854 (Westlaw current through 2009 update) (citing numerous cases). Unit cites a case from this District on this point. That Court held, "'Transfer is particularly appropriate where there is a prior pending lawsuit in the transferee district involving the same facts, transactions, or occurrences.'" *Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 595 (N.D. Tex. 2003) (Kaplan, M.J.) (quoting *Levitt v. Maryland Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986)).

This case and *Schlottman* involve similar facts and occurrences. This is particularly true of Unit's civil-conspiracy counterclaim. That said, unlike *Data Treasury*, which was a patent case, there are no predicate questions here (like claim construction) that must be uniformly determined. By contrast, here it is conceivable — even if the cases were consolidated — that a jury might find some plaintiffs liable for civil conspiracy and others not. It would not be a miscarriage of justice if juries in the *Moore* and *Schlottman* reached different results on Unit's counterclaim. It would not cause havoc for future litigants in the same way that two district courts construing the same patent claims would. Admittedly, the interests of judicial economy would be served somewhat by transferring and consolidating these cases. But the need for uniformity and the interests of judicial economy are not strong enough in this case to weigh in favor of transferring the Moores' case, especially given that Unit has not demonstrated that the Oklahoma forum is clearly more convenient.

ORDER – PAGE 10

## CONCLUSION

Unit did not carry its burden to show that the Western District of Oklahoma is a clearly more convenient forum for the Moores' suit against it. The "interest of justice" also does not clearly favor transferring the Moores' case to the Western District of Oklahoma. Accordingly, the Court denies Unit's motion to transfer venue.

Signed November 17, 2009.

David C. Godbey
United States District Judge